UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TEREN GREAVES and TERRELL GREAVES,　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiffs,　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　-against-　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:　　**COMPLAINT**
THE CITY OF NEW YORK; JUAN　　　　　　:
ACOSTAVILLA; STEVEN CRUVER;　　　　　:　　Index No. 25-CV-8717
CHAD KIRK; BRIAN MCALLISTER;　　　　　:
BRYAN ORTIZ; ANTHONY SALINE;　　　　　:　　**Jury Trial Demanded**
and JOHN/JANE DOES Nos. 1-10,　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendants.　　　　　　　　　:
-------------------------------------------------------------x

Plaintiffs TEREN GREAVES and TERRELL GREAVES, by and through their attorney,

Robert T. Perry, allege upon knowledge, information and/or belief as follows:

### PRELIMINARY STATEMENT

1.　　　Plaintiffs bring this action under 42 U.S.C. § 1983 and the First, Fourth and

Fourteenth Amendments to the United States Constitution against the City of New York ("the

City"), Juan Acostavilla, Steven Cruver, Chad Kirk, Brian Mcallister, Bryan Ortiz and Anthony

Saline, and John/Jane Does Nos. 1-10. All of the individual defendants were employed by the

New York City Police Department ("NYPD") on January 1, 2023. Plaintiffs also assert a

supplemental claim against individual defendants under the New York State Right to Record

Act. N.Y. Civ. Rights Law § 79-p(2) ("RTRA").

2.　　　On January 1, 2023, plaintiffs went to the 48th Precinct in the Bronx to check on

the status of plaintiff Terrell Greaves's son Justin Greaves, who had been arrested and taken to

that precinct. In the station house lobby, plaintiffs repeatedly asked for an update on Justin

Greaves's status, to no avail. Growing frustrated, plaintiff Terrell Greaves loudly said "This is

bullshit" -- a remark that did not disrupt or interfere with any police operations. Defendant police officers then physically removed plaintiffs (and their female companions) from the station house lobby, using excessive force on plaintiffs and causing plaintiff Teren Greaves to aggravate recent rib and back injuries. On the walkway outside the station house, other defendant police officers threatened plaintiffs with force if they did not leave the precinct grounds and slapped plaintiffs' cell phones out of their hands when plaintiffs attempted to record those police officers' aggression, breaking the screen on plaintiff Teren Greaves's phone in the process. Fearful of their safety, plaintiffs (and their female companions) left the precinct grounds without getting an update on Justin Greaves's status.

3.    By their actions inside and outside the station house, the defendant police officers violated plaintiffs' rights to freedom of speech under the First Amendment to the United States Constitution and freedom from unreasonable seizure under the Fourth Amendment to the United States Constitution, as applicable to state and local governments through the Fourteenth Amendment to the United States Constitution, and plaintiffs' right to record law enforcement activity under the RTRA. Plaintiffs seek compensatory and punitive damages to the extent permitted by law.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over plaintiffs' claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

5.    This Court has supplemental jurisdiction over plaintiffs' state law claim under 28 U.S.C. § 1367(a) because the state law claim is so related to the federal claims that the state law claim forms part of the same case or controversy.

6.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiffs' claims occurred in this district.

## JURY DEMAND

7.      Plaintiffs demand a trial by jury on each and every claim for which a jury trial is available under Fed. R. Civ. P. 38(b).

## PARTIES

8.      Plaintiff TEREN GREAVES is a resident of New York County in the City and State of New York.

9.      Plaintiff TERRELL GREAVES is a resident of New York County in the City and State of New York.

10.     Defendant THE CITY OF NEW YORK (the "City") is, and was at all relevant times, a municipal corporation duly organized and existing under the laws of the State of New York.  The City operates the Police Department of the City of New York ("NYPD"), which acts as the City's law enforcement agent and for which the City is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

11.     Defendant JUAN ACOSTAVILLA is and was at all relevant times a duly appointed agent, employee, officer, and servant of the City.  On January 1, 2023, the date of the incident giving rise to the claims here, defendant Acostavilla was a police officer assigned to the NYPD's 48th Precinct in the Bronx, New York.  Defendant Acostavilla is being sued in his individual capacity.

3

12.    Defendant STEVEN CRUVER is and was at all relevant times a duly appointed agent, employee, officer, and servant of the City.  On January 1, 2023, the date of the incident giving rise to the claims here, defendant Cruver was a lieutenant assigned to the NYPD's 48th Precinct in the Bronx, New York.  Defendant Cruver is being sued in his individual capacity.

13.    Defendant CHAD KIRK is and was at all relevant times a duly appointed agent, employee, officer, and servant of the City.  On January 1, 2023, the date of the incident giving rise to the claims here, defendant Kirk was a police officer assigned to the NYPD's 48th Precinct in the Bronx, New York.  Defendant Kirk is being sued in his individual capacity.

14.    Defendant BRIAN MCALLISTER is and was at all relevant times a duly appointed agent, employee, officer, and servant of the City.  On January 1, 2023, the date of the incident giving rise to the claims here, defendant Mcallister was a police officer assigned to the NYPD's 48th Precinct in the Bronx, New York.  Defendant Mcallister is being sued in his individual capacity.

15.    Defendant BRYAN ORTIZ is and was at all relevant times a duly appointed agent, employee, officer, and servant of the City.  On January 1, 2023, the date of the incident giving rise to the claims here, defendant Ortiz was a sergeant assigned to the NYPD's 48th Precinct in the Bronx, New York.  Defendant Ortiz is being sued in his individual capacity.

16.    Defendant ANTHONY SALINE was at all relevant times a duly appointed agent, employee, officer, and servant of the City.  On January 1, 2023, the date of the incident giving rise to the claims here, defendant Saline was a police officer assigned to the NYPD's 48th Precinct in the Bronx, New York.  Defendant Saline is being sued in his individual capacity.

17.     All "John Doe" and "Jane Doe" defendants were at all relevant times duly appointed agents, employees, officers and servants of the NYPD. The Doe defendants are being sued in their individual capacities.

18.     At all relevant times, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers and servants of the City, and otherwise engaged in conduct incidental to the performance of their lawful functions and duties. At all relevant times, the individual defendants were acting for and on behalf of the City, with the power and authority vested in them as agents, employees, officers and servants of the City.

## STATEMENT OF FACTS

### The January 1, 2023 Incident

19.     On the evening of December 31, 2022, plaintiffs and plaintiff Teren Greaves's girlfriend, Joanne Delacruz, celebrated New Year's Eve with family and friends at a club in downtown Manhattan and later elsewhere, before returning to plaintiffs' apartment in East Harlem early on January 1, 2023.

20.     Shortly after 5:00 a.m. on January 1, 2023, plaintiff Terrell Greaves received a phone call from Melissa Polanco, informing him that Justin Greaves, plaintiff Terrell Greaves's and Ms. Polanco's then 20-year-old son, had been arrested and taken to the 48th Precinct at 450 Cross Bronx Expressway in the Bronx.

21.     Plaintiffs decided to go to the 48th Precinct to check on Justin Greaves's status. Ms. Polanco drove them there. Ms. Delacruz went too. They arrived at the 48th Precinct at about 6:00 a.m.

22.    In the lobby inside the 48th Precinct station house, for over an hour, plaintiffs repeatedly asked about Justin Greaves's status but police officers would not provide any update on his status. Growing frustrated, plaintiff Terrell Greaves said loudly "This is bullshit."

23.    Police officers -- Doe defendants -- then grabbed plaintiffs by the arms and physically removed them from the station house.

24.    Police officers also removed Ms. Delacruz and Ms. Polanco from the station house. One officer pointed a taser at Ms. Delacruz and Ms. Polanco.

25.    Plaintiffs, Ms. Delacruz and Ms. Polanco did nothing to warrant their removal from the station house. Plaintiffs merely inquired about Justin Greaves's status. They did not disrupt or interfere with any police operations.

26.    On information and belief, plaintiffs, Ms. Delacruz and Ms. Polanco were removed from the station house simply because plaintiff Terrell Greaves, frustrated by the lack of an update on Justin Greaves's status, loudly said "This is bullshit."

27.    The force used by police officers -- Doe defendants -- to remove plaintiffs from the station house was far more than necessary to accomplish the removal. Indeed, that force was entirely gratuitous, as plaintiffs did not offer any physical resistance. The force thus was objectively unreasonable.

28.    After plaintiffs were removed from the station house, they came into contact, on the walkway outside the station house, with defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline, all of whom were entering the station house.

29.    An argument ensued between plaintiffs and defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline, after one or more of those defendants told plaintiffs -- for no lawful reason -- to leave the precinct grounds.

6

30.    Defendants Ortiz, Cruver and Saline threatened plaintiffs with force if they did not leave the precinct grounds.

31.    There was no justification for the threats, as plaintiffs were lawfully present on precinct grounds, merely inquiring about Justin Greaves's status, not disrupting or interfering with any police operations, and not using force or threatening to use force against any police officers.

32.    Fearful of his safety, plaintiff Teren Greaves began recording the incident on his cell phone but a police officer -- on information and belief, defendant Cruver -- slapped the phone out of plaintiff Teren Greaves's hand, telling plaintiff Teren Greaves that he was not allowed to record the police officer.  The phone fell to the ground and the screen cracked. Picking up the phone and putting it in his pocket, plaintiff Teren Greaves did not again try to record the incident, as he feared that the police officer would further damage the phone or assault him.

33.    Fearful of his safety, plaintiff Terrell Greaves too began recording the incident on his cell phone but an officer -- on information and belief, defendant Cruver -- slapped the phone out of his hand.  The phone fell to the ground but did not break.  Picking up the phone and putting it in his pocket, plaintiff Terrell Greaves did not again try to record the incident, as he feared that the police officer would damage his phone or assault him.

34.    Fearful of their safety, plaintiffs, Ms. Delacruz and Ms. Polanco then left the precinct grounds and returned home, without receiving an update on Justin Greaves's status.

35.    As a result of the excessive force used by defendant police officers to remove him from the station house lobby, plaintiff Teren Greaves aggravated recent rib and back injuries.

36.    As a result of the excessive force used by defendant police officers to remove him from the station house, plaintiff Terrell Greaves suffered back pain.

37.    As a result of the actions of defendant police officers on January 1, 2023 to prevent plaintiffs from recording the officers' aggression, plaintiffs were chilled from recording police activity, both on January 1, 2023 and later.

38.    As a result of the actions of defendant police officers on January 1, 2023, plaintiffs suffered emotional distress, mental anguish, shock, fright, apprehension, embarrassment and humiliation.

**Monell Allegations**

39.    The City was on notice prior to January 1, 2023 that defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline were prone to engage in misconduct against civilians.

40.    In 2022, defendant Acostavilla was the subject of five civilian complaints to the New York City Civilian Complaint Review Board ("CCRB") involving 17 charges. The CCRB substantiated one abuse of authority charge against defendant Acostavilla and recommended command discipline but the NYPD declined to impose any discipline. Although finding that defendant Acostavilla acted within NYPD guidelines as to one charge, the CCRB was unable to determine whether he complied with NYPD guidelines as to 15 other charges. The NYPD appears not to have conducted any further investigation into those charges.

41.    In 2019, defendant Cruver was the subject of two civilian complaints to the CCRB involving seven charges. The CCRB substantiated that defendant Cruver twice abused his authority during a vehicle stop and recommended command discipline which the NYPD imposed. The CCRB, however, was unable to make a determination as to four abuse of authority charges against defendant Cruver. The NYPD appears not to have conducted any further

8

investigation into those charges. The CCRB closed another charge against defendant Cruver in 2019 --apparently for using excessive physical force -- citing pending litigation.

42.    Between 2018 and 2022, defendant Kirk was the subject of three civilian complaints to the CCRB involving five charges, three for abuse of authority and two for discourtesy. The CCRB substantiated all five charges. Although the CCRB recommended that defendant Kirk receive command discipline for discourtesy in one incident, the NYPD imposed no discipline. Although the CCRB recommended that the NYPD bring charges against defendant Kirk for bias and impose command discipline on him for abuse of authority in another incident, the NYPD to date has not brought any charges against or disciplined defendant Kirk for his misconduct in the incident.

43.    In 2022, defendant Mcallister was the subject of two CCRB complaints involving four abuse of authority charges. The CCRB substantiated one abuse of authority charge and recommended command discipline but the NYPD imposed no discipline. The CCRB was unable to make a determination as to three other abuse of authority charges. The NYPD appears to have conducted no further investigation into those charges.

44.    Prior to January 1, 2023, defendant Ortiz was the subject of 11 civilian complaints to the CCRB, involving 25 charges, three of which the CCRB substantiated. Although the CCRB recommended command discipline for defendant Ortiz's discourtesy in one incident and improper threat of force in another incident, the NYPD imposed no discipline in either case.

45.    Prior to January 1, 2023, defendant Saline was the subject of 13 civilian complaints to the CCRB, involving 42 charges, nine of which (mostly for abuse of authority) the CCRB substantiated. The NYPD imposed command discipline on defendant Saline on only one

of the nine substantiated charges. On information and belief, defendant Saline resigned from the

NYPD before the CCRB completed its investigation of the other 33 charges against him.

46.     On information and belief, the NYPD never conducted a meaningful investigation

into misconduct by defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline against

civilians, even though the NYPD was on notice that these defendants had engaged in such

misconduct.

47.     The City's failure through the NYPD to adequately supervise and discipline

defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline led and/or contributed to the

injuries that plaintiffs suffered on January 1, 2023.

## FIRST CLAIM FOR RELIEF

### Freedom of Speech Claim Under 42 U.S.C. § 1983
### (Against All Individual Defendants)

48.     Plaintiffs reallege and incorporate by reference the allegations set forth in the

foregoing paragraphs as if fully set forth herein.

49.     Defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline and the Doe

defendants, acting under color of state law, on January 1, 2023,  prevented plaintiffs from

continuing to make lawful inquiries as to Justin Greaves's status and from recording police

misconduct, in violation of each plaintiff's right to freedom of speech under the First

Amendment to the United States Constitution.

50.     As a result of the foregoing, plaintiffs were chilled from exercising their right to

freedom of speech and also suffered physical injuries, emotional distress and property damages.

51.     The unlawful conduct of defendant police officers was willful, malicious,

oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed

against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force Claim Under 42 U.S.C. § 1983
### (Against the Doe Defendants)

52.      Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

53.      The Doe defendants, acting under color of state law, used objectively unreasonable force on plaintiffs on January 1, 2023, in violation of each plaintiff's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

54.      As a result of the foregoing, plaintiffs suffered physical injuries, emotional distress, and other damages and injuries.

55.      The unlawful conduct of the Doe defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### Failure to Intervene Claim Under 42 U.S.C. § 1983
### (Against All Individual Defendants)

56.      Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

57.      Each defendant police officer had an affirmative duty to intervene on behalf of plaintiffs, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene to prevent the unlawful conduct, despite having a realistic opportunity to do so, in violation of each plaintiff's rights to freedom of speech under the First Amendment to the United States Constitution and freedom from unreasonable seizure under the Fourth Amendment to the United States Constitution.

11

58.    As a result of the foregoing, plaintiffs suffered physical injuries, emotional distress, and other damages and injuries.

59.    The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FOURTH CLAIM FOR RELIEF

**Monell Claim Under 42 U.S.C. § 1983**
**(Against the City)**

60.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

61.    In failing to adequately supervise and discipline the defendant police officers, the City acted with deliberate indifference to the rights of civilians, including plaintiffs, to freedom of speech under the First Amendment to the United States Constitution and freedom from unreasonable seizure under the Fourth Amendment to the United States Constitution.

62.    The City's failure to adequately supervise and discipline the defendant police officers was a moving force behind the violation of plaintiffs' constitutional rights on January 1, 2023, and proximately caused plaintiffs' injuries.

### FIFTH CLAIM FOR RELIEF

**New York State Right to Record Act Claim**
**(Against Defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline)**

63.    Plaintiffs reallege and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

12

64.    Defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline unlawfully interfered with plaintiffs' recording of law enforcement activity on January 1, 2023, in violation of plaintiffs' right to record law enforcement activity under the RTRA.

65.    As a result of the foregoing, plaintiffs suffered property damages, emotional distress, and other damages and injuries.

66.    The unlawful conduct of defendants Acostavilla, Cruver, Kirk, Mcallister, Ortiz and Saline was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages against the individual defendants;

(c)    reasonable attorneys' fees and costs of this litigation; and

(d)    such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       October 21, 2025

                              Respectfully submitted,

                              *Robert T. Perry*

                              ROBERT T. PERRY
                              rtperry32@gmail.com
                              509 12th Street, Suite 2C
                              Brooklyn, New York 11215
                              (347) 415-5272

                              *Counsel for Plaintiffs*

13